UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BAY AREA PAINTERS AND TAPERS PENSION TRUST FUND, ET AL.,

          Plaintiffs,

    v.

ALTA SPECIALTY CONTRACTING, INC.,

          Defendant.
_____/

No. C-06-06996 MJJ (JCS)

**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** [Docket No. 13]

## I.    INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment (the "Motion") seeking entry of default judgment, an award of unpaid fringe benefit contributions and liquidated damages, as well as interest thereon, and attorneys' fees and costs.  Plaintiffs further request that they be permitted to seek any additional attorneys' fees they may incur collecting these amounts and that the Court retain jurisdiction over the action.  The Motion came on for hearing on Friday, October 26, 2007, at 9:30 a.m.[1]  Plaintiffs provided additional materials in support of the Motion on November 2, 2007.  On November 20, 2007, the Court requested additional materials, which were filed on November 30, 2007.

For the reasons stated below, it is RECOMMENDED that the Court GRANT Plaintiffs' Motion and that Plaintiffs be awarded the following amounts: 1) $4,784.28 in unpaid contributions; 2) $478.43 in liquidated damages; 3) $419.72 in interest; 4) $1,690.00 in attorneys' fees; and 5)

---

[1]  Plaintiffs filed two requests that the Motion be decided without hearing.  Because the Court required clarification and additional materials in support of the Motion, those requests were denied.

$732.50 in costs.  It is FURTHER RECOMMENDED that the Court retain jurisdiction over the action to allow Plaintiffs to recover any fees incurred in collecting these amounts.

**II.      BACKGROUND**

Plaintiffs include the following trust funds (the "Trust Funds"): 1) Bay Area Painters and Tapers Pension Fund; 2) Bay Area Painters and Tapers Health Fund; and  3) Bay Area Painters and Tapers Joint Apprenticeship Training Funds.  Complaint, ¶ 1.  The Trust Funds are employee benefit plans within the meaning of § 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3).  *Id.*  In addition, the complaint names as plaintiffs Fred Inman and Charles Del Monte, who are trustees of the Trust Funds, as well as the Boards of Trustees of the Trust Funds.  *Id.*

Plaintiffs allege that Defendant, Alta Specialty Contracting, Inc., entered into a written collective bargaining agreement (the "Master Agreement") with District Council 16 of the International Union of Painters and Allied Trades (the "Union").  Complaint, ¶¶ 2, 11; *see also* Declaration of Michele R. Stafford in Support of Motion for Default Judgment ("Stafford Decl."), Ex. A (Master Agreement excerpt and signature page reflecting that Defendant became a signatory to the Master Agreement on June 2, 2006.  The Master Agreement, in turn, requires employers to abide by the provisions of the trust agreements for the Trust Funds (the "Trust Agreements").  *See* Declaration of Michele R. Stafford in Support of Motion for Default Judgment (Per Court Request) ("Stafford Supp. Decl."), Ex. A (Master Agreement) at 41.  The Master Agreement also provides for contributions to the Work Preservation Fund, the Labor Management Cooperation Initiative and the Bay Area Painters and Tapers Beneficial and Holiday Funds.  Complaint, ¶ 12 (alleging that "Plaintiff Board of Trustees are the assignees of monies due under the Bargaining Agreement for the Work Preservation Fund, . . . for the Labor Management Cooperation Initiation [and the] Industry Fund, Beneficial & Holiday Contributions"); *see also* Declaration of Michele R. Stafford in Response to Order for Additional Briefing ("Stafford Second Supp. Decl."), Ex. A (Master Agreement excerpts) at 39 (Article 17), 52 (Article 19) & 54 (Article 21).

Under the Trust Agreements, employers are required to make contributions to the Trust Funds at a specified rate for each hour worked by employees covered under Master Agreement.  *See* Stafford Second Supp. Decl., ¶ 2 & Ex. B.  Contributions, as well as an Employer's Report listing

United States District Court

For the Northern District of California

hours worked by covered employees for the applicable period, are to be submitted by the first day of the month following the month in which the work was done, and unpaid contributions become delinquent on the 20th of that month. Stafford Supp. Decl., Ex. A at 42, 44-45 (Master Agreement, Article 17, Sections 3 & 6). In the case of delinquent contributions, the Master Agreement provides for liquidated damages, which are the greater of $30.00 or 10% of the amount due and unpaid. *Id.* at 44. In addition, the Master Agreement provides for an award of interest – on both the unpaid contributions and the liquidated damages – at a rate of 7% per annum, which begins accruing on the date the contribution becomes delinquent. *Id.* Where an employer fails to make required contributions under the Master Agreement, the employer is also liable for "all reasonable expenses incurred by the Trust Funds in the collection of [the contributions, liquidated damages and interest], including but not limited to, reasonable attorney's and accountant's fees, costs of attachment bond, court costs and all costs of collection after a judgment is obtained." *Id.*

In the Complaint, Plaintiffs allege that Defendant failed to make required contributions for the months of July through September 2006. Complaint, ¶ 14. Plaintiffs seek to recover these unpaid contributions, as well as liquidated damages, interest, and attorneys' fees and costs, under 29 U.S.C. §§ 1132(g) and 1145 and the Master Agreement. *Id.* at 5-6.

Default was entered on March 7, 2007, and Plaintiffs now bring a motion for default judgment. In the Motion, Plaintiffs assert that Defendant has failed to make employee benefit contribution payments for the months of June through August 2006. Declaration of Rose Cortez in Support of Motion for Entry of Default Judgment ("Cortez Decl."), ¶ 2. According to Plaintiffs, the amounts of the unpaid contributions are: 1) $2,486.38 for June 2006; 2) $2,792.92 for July 2006; and 3) $1,991.36 for August 2006, giving rise to total unpaid contributions in the amount of $7,270.66. Cortez Decl., ¶ 3. These amounts are based on self-reporting by Defendant but have been recalculated by Plaintiffs on the basis that Defendant allegedly calculated the contribution rates incorrectly. *Id.*, ¶ 3 & Ex. A (Employer Reports for June through August 2006); *see also* Stafford Second Supp. Decl., ¶ 2. In particular, Plaintiffs assert that Defendant calculated the contribution amounts at a fringe rate of $14.73, whereas the correct rate for June 2006 was $17.03 and for July and August 2006 was $17.78. *Id.* In addition to the unpaid contributions, Plaintiffs seek liquidated

**United States District Court**
For the Northern District of California

1   damages in the amount of 10 % of each unpaid contribution, and interest on the contributions and

2   liquidated damages – calculated from the 21st day of the month the contributions were due – at a

3   rate of 7%. *Id.* Finally, Plaintiffs seek $3,332.50 in attorneys' fees and $732.00 in costs.

4   **III.    ANALYSIS**

5   **A.    Entry of Default Judgment**

6   Plaintiffs have applied for a default judgment in this action on the basis that Defendants have

7   failed to appear after valid service. Under Federal Rule of Civil Procedure 55(b)(2), the court may

8   enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default

9   based upon a failure to plead or otherwise defend the action. The district court's decision to enter a

10  default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956)

11  (affirming district court's denial of default judgment). The court is free to consider a wide range of

12  factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to

13  the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

14  the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6)

15  whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal

16  Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-

17  72 (9th Cir. 1986); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil § 2685.

18  Where a default judgment is deemed appropriate, the factual allegations of the complaint,

19  except those relating to damages, are taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560

20  (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). So long as the allegations in

21  the complaint are "well-pleaded," liability is established as to those allegations by the default. *Trans*

22  *World Airlines Inc. v. Hughes*, 308 F. Supp. (D.C.N.Y. 1969), *modified on other grounds*, 449 F.2d

23  51, *rev'd on other grounds*, 409 U.S. 363 (1973).

24  Plaintiffs' claims are well-pleaded. Further, there is no evidence in the record that suggests

25  that default judgment should not be entered. Therefore, liability is established and default judgment

26  should be entered against Defendant.

27

28

**United States District Court**
For the Northern District of California

**B.      Requested Relief**

       **1.      Section 1132(g)**

Once liability is established in a default situation, a plaintiff must then establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560. Under ERISA, an employee benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29 U.S.C. § 1145 is entitled to:

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of –

        (1) interest on the unpaid contributions, or

        (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

       **2.      Contributions**

Defendants seek $7,270.66 in unpaid contributions for the months of June, July, and August 2006. Cortez Decl., ¶ 3. As a preliminary matter, the Court must address whether Plaintiffs are entitled to *any* delinquent contributions (or associated liquidated damages or interest) for the month of June 2006, which was not listed in the Complaint. It then must determine the appropriate amount of contributions for each month Plaintiffs are eligible to recover contributions.

Plaintiffs did not list the June 2006 contribution in their Complaint, even though it was delinquent at the time the Complaint was filed. It is black-letter law that relief accompanying a default judgment is constrained by the remedies sought in the complaint. *See* Fed. R. Civ. P. 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the [complaint]"). Courts in the Ninth Circuit have made a limited exception to this requirement for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA. *See, e.g., Bd. of Trs. of Sheet Metal Workers Health Care Trust of N. Cal. v. Bridon, Inc.*, 1995 WL 573701 * 3 (N.D. Cal. Sept. 19,

1995) ("allowing plaintiffs to seek recovery of contributions that become delinquent after suit is filed would accord with congressional intent").  In particular, courts have found that it would frustrate ERISA's goals to require trust funds to file successive lawsuits for each new contribution that becomes delinquent.  *Id*.  Where, as here, the contribution was delinquent at the time the complaint was filed, however, this concern does not come into play.  Even assuming that there might be circumstances under which it would, Plaintiffs have offered no reason for failing to include the June contribution in the Complaint.  Therefore, the exception to the requirement of Rule 54(c) does not apply and Plaintiffs are not entitled to the June 2006 contribution.

The Court now turns to the July and August contributions.  The contribution reports attached to the Cortez Declaration reflect that in July 2006, 164 hours were worked by two individuals in the "journeyman" class of workers.  Cortez Decl., Ex. A.  In August 2006, 112 hours were worked by a single individual in the same class.  *Id*.  According to Plaintiffs, Defendant used the wrong contribution rates in calculating the contributions due reflected on the contribution reports.  *Id*. ¶ 3.  Plaintiffs explain that the correct rate for July 2006 was $17.03 and the correct rate for August 2006 was $17.78.  *See* Stafford Supp. Decl., ¶ 4; Stafford Second Supp. Decl., ¶ 2 & Ex. B.  Using these rates, the amount due for July was $2,792.92; the amount due for August was $1,991.36, giving rise to a total of $4,784.28.  This amount should be awarded in full.

### 3.     Liquidated Damages

Plaintiffs seek liquidated damages for each of the three months that contributions were not paid, calculated at a rate of 10%.  Plaintiffs are entitled to liquidated damages under ERISA, 29 U.S.C. § 1132(g), and the Master Agreement, which provides for liquidated damages calculated as the greater of $30.00 or 10% of the amount due and unpaid.  Stafford Decl., Ex. A (Master Agreement, Article 17) at 44.  However, for the same reason Plaintiffs may not cover the June contribution, they also may not recover liquidated damages on that contribution.  Accordingly, Plaintiffs should be awarded liquidated damages in the amount of $279.29 on the July 2006 contribution and $199.14 on the August 2006 contribution, giving rise to total liquidated damages in the amount of $478.43.

### 4.     Interest

United States District Court

For the Northern District of California

Plaintiffs request an award of interest at a rate of 7%, which they assert should be calculated on not only the unpaid contributions but also the liquidated damages.  This request is consistent with the Master Agreement, which specifies that interest accrues on both the contributions and the liquidated damages.  *See id.* at 44.  It is less clear, however, whether ERISA allows for such an award.  Section 1132(g)(2)(B) permits the award of "interest on the unpaid contributions."  It does not provide for interest on liquidated damages.  The Court concludes that ERISA does not allow for an award of interest on the liquidated damages themselves.

First, in response to the Court's repeated requests, Plaintiffs have been unable to cite to any case in which a court has awarded such a remedy – or even a case suggesting that such a remedy would be consistent with Congress's intent in enacting § 1132(g).  Second, given that Congress expressly addressed the issue and did not provide for interest on liquidated damages, the Court concludes that Congress *did not* intend to allow interest to be awarded on liquidated damages.  This conclusion is supported not only by the clear language allowing "interest on the unpaid contributions" but also the 20% cap Congress placed on liquidated damages in § 1132(g)(2)(C).  Allowing courts to award interest on liquidated damages would effectively open the door to liquidated damage awards that exceed the 20% cap – a result that is inconsistent with the carefully crafted remedies set forth in § 1132(g)(2).  Therefore, the Court should award interest on the contributions only.

Applying the 7% rate, Plaintiffs are entitled to $252.20 in interest on the July contribution (calculated from August 21, 2006, the first day the payment was delinquent, to the date of this Report and Recommendation) and $167.52 (calculated from September 21, 2006, the first day the payment was delinquent, to the date of this Report and Recommendation).  Therefore, Plaintiffs should be awarded a total of $419.72 in interest.

### 5.    Attorneys' Fees

Plaintiffs  assert that to date they have incurred attorneys' fees in the amount of $3,332.50 in their efforts to enforce Defendant's obligations under the Trust Agreements.  Stafford Decl., ¶ 6.  According to Stafford, these fees "were incurred from November 3, 2006 for preparation, filing and service of the Complaint; for conferences and correspondence with defendant; for conferences and correspondence with clients, plaintiffs' administrator; for preparation of the Request for Default;

1    calculation of all amounts due, and preparation of this Motion for Default Judgment, supporting

2    declarations and proposed judgment." *Id*. Specifically, the fees are based on the following rates and

3    hours: 1) 2.7 hours by Stafford, at a rate of $175.00/hour; 2) 7.5 hours by attorney Muriel Kaplan, at

4    a rate of $180.00/hour; 3) 4.4 hours by paralegal Tamra Brown at a rate of $100.00 per hour; and 4)

5    10.7 hours by paralegal Vanessa de Fabrega, at a rate of $100.00 per hour. *Id*

6         Having prevailed in this action for unpaid and late contributions, Plaintiffs are entitled to

7    reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2)(D). The rates billed by

8    Plaintiffs' counsel are reasonable. The amount of time billed, however, is not. *See, e.g., Bd. of Trs.*

9    *of Bay Area Roofers v. Ace Roofing Co*., 2005 WL 3497820 (N.D. Cal. Jun. 16, 2005) (awarding

10   fees for approximately five hours of attorney time and no paralegal time in ERISA collection case

11   similar to this case). This case was extremely straightforward, involving only two or three unpaid

12   contributions. Defendants were not required to conduct an audit and the record does not indicate

13   any unusual procedural aspects of the case that would have necessitated that so many hours be spent

14   on the case. The pleadings are largely boilerplate, with the exception of some simple calculations.

15   Even so, Plaintiffs' default judgement motion omitted many of the essential documents that should

16   have been provided in support of the motion. As a result, the Court was required to make repeated

17   requests of counsel in an effort to complete the record. Finally, Plaintiffs' vague descriptions of how

18   the time was spent do not offer any indication of why the amount of time billed was not excessive.

19   It is particularly difficult to understand how over 15 hours of paralegal time could have been billed

20   in this case.

21        Accordingly, it is RECOMMENDED that the fee request be reduced as follows: 1) the hours

22   for Stafford should be reduced from 2.7 to 2; 2) the hours for Kaplan should be reduced from 7.5 to

23   3; and 3) the hours for paralegal work should be reduced from 15.1 to 8. With these reductions, fees

24   should be awarded in the amount of $1,690.00.

25        **6.    Costs**

26        Plaintiffs further seek to recover costs in the amount of $732.50, that is, $350.00 for the

27   filing fee in this action and $382.00 for personal service. Under Civil Local Rule 54-3, an award of

28   costs may include the clerk's filing fee and fees for service of process "to extent reasonably required

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  and actually incurred."  Plaintiffs have adequately documented these costs.  *See* Stafford Supp.

2  Decl., Ex. D.  Therefore, Plaintiffs' costs should be awarded in the amount of $732.50.

3  **7.    Retention of Jurisdiction**

4  Plaintiffs request that the Court retain jurisdiction so that the judgment may be amended, if

5  necessary, to include any attorneys' fees and costs incurred in collecting the amounts discussed

6  above.  In ERISA cases, courts may retain jurisdiction to amend a default judgment to more

7  accurately reflect the plaintiff's damages where some aspect of damages has not yet been

8  determined.  *See Bd. of Trs. of Laborers Health & Welfare Trust v. Atoll Topui Island, Inc.*, 2007

9  WL 174409 *10 n.4 (N.D. Cal. Jan. 22, 2007) (adopting magistrate judge recommendation that the

10  court retain jurisdiction in ERISA action for delinquent contributions to amend default judgment

11  after audit had been completed).  As Plaintiffs are entitled to the costs of collection under both the

12  Master Agreement and ERISA, it is RECOMMENDED that the Court retain jurisdiction over the

13  action.

14  **IV.    CONCLUSION**

15  For the reasons stated above, it is RECOMMENDED that default judgment be GRANTED.

16  Plaintiffs should be awarded the following amounts: 1) $4,784.28 in unpaid contributions;

17  2) $478.43 in liquidated damages; 3) $419.72 in interest; 4) $1,690.00 in attorneys' fees; and

18  5) $732.50 in costs.  It is FURTHER RECOMMENDED that the Court retain jurisdiction over the

19  action.

20

21  Dated: December 5, 2007

22

23  JOSEPH C. SPERO
   United States Magistrate Judge

24

25

26

27

28